UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

BERNARD AND ANDREA TEW                                          CHAPTER 11
                                                          CASE NO. 20-51078

      DEBTORS

---

**DEBTORS' SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

---

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Dean A. Langdon, Esq.
KY Bar No. 40104
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Facsimile: (859) 281-1179
E-mail:  dlangdon@dlgfirm.com
COUNSEL FOR DEBTORS


Dated:  July 26, 2021

## SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## OF BERNARD AND ANDREA TEW

### TABLE OF CONTENTS

Section  Title                                                               Page

I.        DEFINITIONS ................................................................................. 1

II.       GENERAL OVERVIEW OF THE PLAN ........................................................ 1

III.      TREATMENT OF UNCLASSIFIED CLAIMS.................................................. 2-3

IV.       CLASSIFICATION OF CLAIMS AND INTERESTS ...................................... 3-4

V.        TREATMENT OF CLASSIFIED CLAIMS ................................................... 4-10

VI.       MEANS OF IMPLEMENTATION OF PLAN ............................................... 10-11

VII.      IMPAIRED CLASSES .................................................................... 11

VIII.     MANAGEMENT OF REORGANIZED DEBTORS ...................................... 11

IX.       NOTICES ................................................................................... 12

X.        EXECUTORY CONTRACTS AND LEASES ............................................. 12

XI.       CRAM DOWN ............................................................................ 13

XII.      MISCELLANEOUS PLAN PROVISIONS ................................................. 13-14

XIII.     RETENTION OF JURISDICTION ........................................................ 15-17

          EXHIBIT A – PLAN DEFINITIONS .......................................................... 17-20

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

BERNARD AND ANDREA TEW                                    CHAPTER 11
                                                 CASE NO. 20-51078

      DEBTORS

---

## DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION

---

      Bernard V. Tew and Andrea B. Tew (the "Debtors"), hereby propose the following Plan of Reorganization to their Creditors pursuant to the provisions of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

      1.1    <u>Defined Terms</u>:  All capitalized terms used herein and not otherwise defined have the meanings given to them in the Definitions attached hereto as <u>Exhibit A</u> or, if not defined in <u>Exhibit A</u>, then as defined in the Bankruptcy Code, unless the context clearly requires otherwise.

      1.2    <u>Rules of Construction</u>:  The rules of construction used in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

## ARTICLE II
## GENERAL OVERVIEW OF THE PLAN

      The Plan contemplates reliance upon Mrs. Tews' income and Dr. Tews' social security to pay ordinary living expenses, while Dr. Tew will use his knowledge and experience to advise a team of equity traders on an ADR arbitrage process. The Debtors will benefit from this process as Dr. Tews' Roth IRA and family retirement accounts are beneficiaries of a pension group trust that will share in ADR arbitrage profits pursuant to a swap agreement.  Additional information about this process is located in Section 5.6.2 of the Disclosure Statement. The Debtors will seek to modify their secured debts to the extent possible or mutually agreed and resume regular payments thereon. The Debtors will establish an escrow account to be funded with regular payments to pay unclassified and unsecured claims. The Debtors expect numerous claim objections will be needed to resolve contingent, unliquidated and disputed claims.

      THIS GENERAL SUMMARY IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE SPECIFIC PROVISIONS OF THE PLAN AS SET FORTH HEREIN WHICH GOVERN.

# ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims consist of Allowed Administrative Claims which shall be paid as set forth below.

3.1    <u>United States Trustee Fees</u>.  All fees payable to the U. S. Trustee pursuant to 28 U.S.C. §1930 have been paid or shall be paid on or before the later of the Effective Date or the date they become due.  Following Confirmation, the Reorganized Debtors' obligation to pay U.S. Trustee fees shall continue until the Bankruptcy Case is converted, dismissed or closed, whichever occurs first, and said fees will be paid by the Reorganized Debtors in the ordinary course as they are incurred.  U.S. Trustee fees shall be paid from the Reorganized Debtors future revenue.

3.2    <u>Ordinary Course Administrative Claims.</u>  Allowed Administrative Claims incurred between the Petition Date and the Effective Date in the ordinary course of the Debtors' business shall be paid by the Reorganized Debtors in accordance with the terms of any agreements governing such transactions.  Ordinary Course Administrative Claims shall include any Administrative Claims of Tax Creditors for post-petition tax obligations which may have accrued by the Effective Date, but are not yet paid.  Ordinary Course Administrative Claims are excluded from Disposable Income.

3.3    <u>Other Administrative Claims and Bar Date</u>.  Except as provided in Sections 3.1, 3.2 and 3.4, all other entities seeking payment of an Administrative Claim shall file their respective request for allowance and payment thereof no later than <u>thirty (30) days after the Confirmation Date</u> or such other date as may be fixed by an order of the Bankruptcy Court.  All holders of Other Administrative Claims shall (i) be paid in full in such amounts as are Allowed by the Bankruptcy Court (A) if Allowed as of the Effective Date, on the Effective Date or as soon thereafter as is practicable, and (B) if not Allowed on the Effective Date, within 30 days of the date the Claim becomes an Allowed Administrative Claim, or (ii) be paid upon such other terms as may be mutually agreed upon between such Creditor and the Reorganized Debtors.  Other Administrative Claims shall be paid from Disposable Income.

Holders of Other Administrative Expense Claims that do not file and serve a request for allowance and payment by the bar date set forth in this section <u>will be forever barred</u> from asserting such Claims.  A proof of claim asserting administrative priority under 11 U.S.C. §§ 507(a)(1), 503(b) or 507(b) or otherwise is not a proper request for allowance and payment of an Administrative Expense Claim in accordance with this section.

3.4    <u>Professional Compensation and Reimbursement Claims.</u>  All Professionals seeking compensation for services or reimbursement of expenses incurred through and including the Confirmation Date shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred no later than <u>thirty (30) days after the Confirmation Date</u> or such other date as may be fixed by the Bankruptcy Court.  Any Allowed Administrative Claims under this Section 3.4 shall be paid in full on such terms as are agreed between the Professional and the Reorganized Debtors from Disposable Income.

2

3.5     <u>Administrative Tax Claims</u>.    Allowed Administrative Claims of a Tax Creditor shall be paid in full, plus interest thereon at the rate prescribed by 11 U.S.C. § 511 from its due date until paid, on the later of (a) the Effective Date or (b) the date on which such Allowed Claim becomes due and payable pursuant to the terms thereof.

3.7     <u>Priority Tax Claims</u>.    Allowed Priority Tax Claims will be paid through equal deferred monthly cash payments over five (5) years from the Petition Date with interest at the rate prescribed in 11 U.S.C. § 511 until paid in full with payments commencing the month after the Effective Date.  The Internal Revenue Service has filed a proof of Claim (Claim No. 9) asserting $*0* in Allowed Priority Tax Claims and Kentucky Department of Revenue has not filed a proof of Claim. The Debtors do not believe there are any unpaid Priority Tax Claims.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

The following classes are hereby designated under this Plan:

4.1     <u>Class 1:  Secured Claims of Branch Banking & Trust Company now Truist:</u>  Class 1 shall consist of the Secured Claim of Branch Bank & Trust Company, now Truist ("Truist") secured by a purchase-money lien on a 2015 Mercedes ML 250

4.2     <u>Class 2:  Secured Claim of LSC 2020, LLC:</u>  Class 2 shall consist of the Secured Claim of LSC 2020, LLC secured by a second-priority mortgage against the Debtors' Residence.

4.3     <u>Class 3:  Secured Claim of Central Bank & Trust Company:</u>  Class 3 shall consist of the Secured Claim of Central Bank & Trust Company ("Central Bank") secured by a third-priority mortgage against the Debtors' Residence.

4.4     <u>Class 4:  Secured Claim of Wilmington Savings Fund Society, FSB, as trustee for Upland Mortgage Loan Trust B</u>:  Class 4 shall consist of the Secured Claim of Wilmington Savings Fund Society, FSB, trustee for Upland Mortgage Loan Trust B, secured by a first-priority mortgage against the Debtors' Residence.

4.5     <u>Class 5:  Secured Claim of Madison Street, LLC:</u>  Class 5 shall consist of the Secured Claim of Madison Street, LLC ("Madison"), previously secured by a fourth-priority mortgage against the Debtors' Residence, but which was disclaimed in the Woodford Circuit Court foreclosure action.

4.6     <u>Class 6:  Other Secured Claims:</u>  Class 6 shall consist of any other Secured Claims other than Class 1-5 Claims.

4.7     <u>Class 7:  Unsecured Claims:</u>  Class 7 shall consist of the Unsecured Claims, other than administrative and priority claims.

3

4.8     Class 8:  Contingent, Unliquidated or Disputed Claims:  Class 8 shall consist of all Claims designated by the Debtors as contingent, unliquidated or disputed in their bankruptcy schedules.

# ARTICLE V
# TREATMENT OF CLASSIFIED CLAIMS

On the respective dates set forth herein, or as soon as practicable following the date a classified claim becomes an Allowed Claim, whichever is later, the Reorganized Debtors shall make the following payments, undertake the considerations hereinafter set forth, and be obligated with respect to such Claims, as follows:

5.1 **Class 1:  Allowed Secured Claim of Branch Banking & Trust Company now Truist.** Class 1 shall consist of the Allowed Secured Claim of Branch Banking & Trust Company, now Truist ("Truist") [Claim No. 2] in the total amount of $5,911.41 as of the Petition Date, which is secured by a purchase-money lien on a 2015 Mercedes ML250 owned by the Debtors (the "Vehicle").

5.1.1 **Retention of Liens/Adequate Protection**.  Subject to any cash collateral carve-outs and adequate protection as approved by prior Orders of this Court, Truist will retain its lien on the Vehicle until paid in full as set forth herein or until the Vehicle is sold under the terms of this Plan, with the lien to attach to the proceeds of any such post-Confirmation sale, after payment of ordinary costs of sale.

5.1.2 **Future Sales of Collateral.**  Following the Effective Date, the Reorganized Debtors may elect to sell the Vehicle by a sale pursuant to 11 U.S.C. § 1123(a)(5)(D).  If the Vehicle is sold following Confirmation, the sale will be free and clear of any and all Claims, liens, interests and encumbrances.  The Truist Claim shall attach to the proceeds of such a sale in the order of priority which existed on the Effective Date and, after payment of ordinary closing costs and fees, shall be paid in that order from the net proceeds of the sale, or as the Reorganized Debtors and Truist may otherwise agree. Any surplus proceeds shall be retained by the Debtors.

5.1.3 **Payment of Class 1 Claim.**

(a)     The sum of $5,911.41 will be the secured portion of the Truist Claim. The Class 1 Claim has been fully repaid in the ordinary course through the Debtors making monthly payments pursuant to the underlying agreement with Truist. The Class 1 Claim is Not Impaired.

(b)     To the extent not specifically modified by the terms of this Plan, the rights and obligations of the Reorganized Debtors and Truist set forth in the loan documents underlying the Class 1 Claim shall continue in full force and effect post-Confirmation.

4

5.2    **Class 2: Secured Claim of LSC 2020, LLC.**  Class 2 consists of the Secured Claim of LSC 2020, LLC ("LSC") [Claim No. 7] in the amount of $175,014.09 as of the Petition Date, which is secured by a second priority mortgage against the Debtors' Residence. LSC is the transferee of the Claim from Branch Banking & Trust Company, now Truist. See ECF No. 104.

5.2.1    **Retention of Liens/Adequate Protection**.  Subject to any cash collateral carve-outs and adequate protection as approved by prior Orders of this Court, LSC will retain its lien on the Residence until paid in full as set forth herein or until the Residence is sold under the terms of this Plan, with the lien to attach to the proceeds of any such post-Confirmation sale, after payment of ordinary costs of sale. LSC shall apply any adequate protection payments to the principal balance of its Claim.

5.2.2    **Future Sales of Collateral.**  Following the Effective Date, the Reorganized Debtors may elect to sell the Residence by a sale pursuant to 11 U.S.C. § 1123(a)(5)(D).  The Debtors shall provide LSC with no less than thirty (30) days' advance notice of any proposed sale of the Residence, including the terms of sale. LSC may seek to have the Bankruptcy Court modify the proposed terms of sale, provided any hearing shall be conducted prior to the proposed closing date. Any such sale shall be free and clear of any and all Claims, liens, interests and encumbrances.  The Class 2 Claim shall attach to the proceeds of such a sale in the order of priority which existed on the Effective Date and, after payment of ordinary closing costs and fees, shall be paid in that order from the net proceeds of the sale, or as the Reorganized Debtors and LSC may otherwise agree. Any surplus proceeds shall be distributed under the Plan.

5.2.3    **Payment of Class 2 Claim.**

(a)    The Class 2 Claim will be repaid through regular monthly principal and interest payments, as follows:  The sum of $175,014.09 will be the secured portion of the LSC Claim and will be amortized over fifteen (15) years at an annual interest rate of 5.0% and a monthly payment of $1,384.00, with the entire then-outstanding balance of the secured portion of the Class 2 Claim to become due five (5) years after the Effective Date, with no prepayment penalties.  LSC shall be entitled to be paid its reasonable legal fees incurred through the Effective Date over a period of twelve (12) months after the Effective Date. Payments on the Class 2 Claim will begin on the 14th day of the first full month after the Effective Date and will continue to be come due on the 14th day of the month thereafter until the secured portion of the Class 2 Claim is paid in full.  The Class 2 Claim is Impaired.

(b)    Upon written request of LSC, the Debtors will execute loan documents consistent with terms of a confirmed Plan; provided, however, that the Debtors shall not incur any fees, costs, charges or other expenses in connection with any such loan documents.

(c)    Notwithstanding anything in Section 12.12 to the contrary, the Reorganized Debtors shall have ten (10) days to cure or contest in good faith any notice of default in making the monthly payments provided for in Section 5.2.3(a).  In no event shall LSC be required to send the Reorganized Debtors and their counsel of record more than two (2) notices of payment default in any

5

twelve (12) month period, and LSC may immediately proceed with the filing of a Motion to Terminate the Automatic Stay with respect to the Residence upon the third payment default in any twelve (12) month period. After the Effective Date, all other terms and conditions in the Mortgage of Real Estate dated January 28, 2013 filed in Mortgage Book 694, Page 55, and attached to Claim 2-1 not expressly modified herein, including without limitation the timely payment of real estate taxes and maintenance of sufficient insurance for the Debtors' Residence, shall remain in full force and effect.

      5.3    **Class 3: Allowed Secured Claim of Central Bank & Trust Company.**  Class 3 consists of the Allowed Secured Claim of Central Bank & Trust Company ("Central Bank") [Claim No. 8], in the amount of $275,600.81 as of the Petition Date. The Class 3 Claim is secured by a third-priority mortgage against the Debtors' Residence.[1] The mortgage matured prior to the Petition Date, and Central Bank obtained a personal judgment against the Debtors in the amount of $260,621.69 plus interest at the annual rate of 10.75% from December 27, 2019 until paid in the Woodford Circuit Court on February 12, 2020. The Woodford Circuit Court judgment also adjudicated the third-priority status of Central Bank's mortgage.

      5.3.1    **Retention of Liens**. Subject to any cash collateral carve-outs as approved by prior cash collateral Orders of this Court, Central Bank will retain its lien on the Residence until paid in full as set forth herein or until the residence is sold under the terms of this Plan, with the lien to attach to the proceeds of any such post-Confirmation sale, after payment of ordinary costs of sale.

      5.3.2    **Future Sales of Collateral.**  Following the Effective Date, the Reorganized Debtors may elect to sell the Residence by a sale pursuant to 11 U.S.C. § 1123(a)(5)(D). If the Residence is sold following Confirmation, the sale shall be free and clear of any and all Claims, liens, interests and encumbrances. The Class 3 Claim shall attach to the proceeds of such a sale in the order of priority which existed on the Effective Date and, after payment of ordinary closing costs and fees, shall be paid in that order from the net proceeds of the sale, or as the Reorganized Debtors and Central Bank may otherwise agree. Any surplus proceeds shall be distributed under the Plan.

      5.3.3    **Payment of Class 3 Claims.**

      (a)    The Class 3 Claim will be repaid through regular principal and interest payments, as follows: The sum of $275,600.81 will be the secured portion of the Central Bank Claim and will be amortized over fifteen (15) years at an annual interest rate of 5.0%. The Debtors will make monthly payments of accrued interest (approximately $930 initially) and quarterly payments of principal (approximately $2,500 initially), with the entire then-outstanding balance of the secured portion of the Class 3 Claim to become due five (5) years after the Effective Date, with no prepayment penalties. Central Bank shall be entitled to be paid its reasonable legal fees incurred through the Effective Date within thirty (30) days after full payment of the Class 3 Claim. Payments on the Class 3 Claim will begin on the 14th day of the first full month after the Effective Date and will continue to be come due on the 14th day of the month thereafter until the secured portion of the Class 3 Claim is paid in full. The Debtors will not be in default under the Plan unless a payment is

---

[1] Central Bank also has a mortgage against an adjacent farm owned by Tew, LP.

6

more than 10 days past due, and the Debtors shall have a period of 14 days after written notice of a default from Central Bank to cure any default prior to Central Bank seeking relief from the injunction provided by the Plan. The Class 3 Claim is Impaired.

(b)     Upon written request of Central Bank, the Debtors will execute loan documents consistent with terms of a confirmed Plan; provided, however, that the Debtors shall not incur any fees, costs, charges or other expenses in connection with any such loan documents.

5.4     **Class 4: Allowed Secured Claim of Wilmington Savings Fund Society, FSB, as trustee for Upland Mortgage Loan Trust B.**   Class 4 consists of the Allowed Secured Claim of Wilmington Savings Fund Society, FSB as trustee ("Wilmington") [Claim No. 3], in the amount of $2,606,444.59 as of the Petition Date.  The Class 4 Claim is secured by a first-priority mortgage against the Debtors' Residence.  The mortgage secures an adjustable-rate note dated February 9, 2007 in the amount of $3,000,000.00, payable to Citimortgage, Inc. The mortgage matures in 2037. On February 12, 2020 Wilmington obtained a personal judgment from the Woodford Circuit Court against the Debtors in the amount of $2,527,670.30 plus interest at an annual rate of 5.25% from May 1, 2019 until paid. Claim No. 3 provides that Wilmington's claim is in the principal amount of $2,390,309.29, bearing interest at an annual rate of 4.25%, along with accrued interest of $151,952.49, fees and costs of $20,571.34, and an escrow deficiency of $43,610.48 as of the Petition Date.

5.4.1     **Retention of Liens**.  Subject to any cash collateral carve-outs as approved by prior cash collateral Orders of this Court, Wilmington will retain its lien on the Debtors' Residence until paid in full as set forth herein or until the Residence is sold under the terms of this Plan, with the lien to attach to the proceeds of any such post-Confirmation sale, after payment of ordinary costs of sale.

5.4.2     **Future Sales of Collateral.**  Following the Effective Date, the Reorganized Debtors may elect to sell the Residence by a sale pursuant to 11 U.S.C. § 1123(a)(5)(D), provided, however that Wilmington shall retain a right to credit bid at any such sale equivalent to the rights granted by 11 U.S.C. § 363(k).  Any such sale of the Residence shall be free and clear of any and all Claims, liens, interests and encumbrances.  The Class 4 Claims shall attach to the proceeds of such a sale in the order of priority which existed on the Effective Date and, after payment of ordinary closing costs and fees, shall be paid in that order from the net proceeds of the sale, or as the Reorganized Debtors and Wilmington may otherwise agree. Any surplus proceeds shall be distributed under the Plan.

5.4.3     **Payment of Class 4 Claims.**

(a)     The Class 4 Claims will be repaid through regular monthly principal and interest payments, as follows:  The principal sum of $2,390,309.29 will be a part of the secured portion of the Wilmington Claim and the Debtors shall resume regular payments of principal, interest, taxes and insurance under the adjustable-rate note on the 1st day of the first full month after the Effective Date.   Pre-petition principal amounts, interest, fees and the escrow deficiency owed as

7

of the Petition Date (the "Wilmington Fees") as set forth in the Wilmington Claim shall be paid by the Debtors in 36 equal monthly installments after the Effective Date, without interest, beginning the third month after the Effective Date. Payment of principal, interest, fees and escrow payments coming due between the Petition Date and the Effective Date are controlled by the Order regarding Relief from the Automatic Stay [ECF No. 181], the terms of which are incorporated herein by reference. Wilmington shall be entitled to include its reasonable legal fees incurred through the Effective Date in the Wilmington Fees. Payments on the Class 4 Claim will begin on the 1st day of the first full month after the Effective Date and will continue to be come due on the 1st day of the month thereafter until the secured portion of the Class 4 Claim is paid in full. The Class 4 Claim is Impaired.

(b)      To the extent not specifically modified by the terms of this Plan, the rights and obligations of the Reorganized Debtors and Wilmington set forth in the loan documents underlying the Class 4 Claims shall continue in full force and effect post-Confirmation.

5.5    **Class 5: Allowed Secured Claim of Madison Street, LLC.** Class 5 consists of the Allowed Secured Claim of Madison Street, LLC ("Madison") [Claim No. 11], in the amount of $340,082.19 as of the Petition Date.  The Class 5 Claim is secured by a fourth-priority mortgage against the Debtors' Residence.[2] The mortgage matured prior to the Petition Date, and Madison was named as a defendant in the foreclosure suit filed by Central Bank in Woodford Circuit Court. Pursuant to a judgment of the Woodford Circuit Court entered on February 12, 2020, it was determined that Madison held no interest in the Debtors' Residence.

5.5.1    **Retention of Liens/Adequate Protection**.  In light of the prior judicial determination that Madison has no interest in the Debtors' Residence, any lien or mortgage against the Debtors' Residence will be avoided and extinguished on the Confirmation Date. This provision shall not affect or modify any other liens or security interests Madison may have against Tew LP.

5.5.2    **Future Sales of Collateral.** Following the Effective Date, the Reorganized Debtors may elect to sell their Residence by a sale pursuant to 11 U.S.C. § 1123(a)(5)(D). Any such sale of the Residence shall be free and clear of any and all Claims, liens, interests and encumbrances.  The Class 5 Claims shall not attach to the proceeds of such a sale. Any surplus proceeds shall be distributed under the Plan.

5.5.3    **Payment of Class 5 Claim.**  The Class 5 Claim will be repaid pro-rata as a Class 7 unsecured creditor. The Class 5 Claim is Impaired.

5.6    **Class 6: Allowed Other Secured Claims.** Class 6 shall consist of all other Secured Claims, if any, excluding the Class 1 - 5 Secured Claims.  The Plan provides that, in satisfaction of the Allowed Secured Claim of any Class 6 Claimant, if any, the Debtors shall, on the Effective Date, or such other date as may be agreed on, at the Debtors' option, either: (i) surrender the collateral to the Claimant to allow it to liquidate said collateral at its discretion; or (ii) pay the amount of such Allowed Secured Claim to the Class 6 Creditor over time during the life of the Plan.  Any Allowed

---

2 Madison also has a lien against a thoroughbred horse owned by Tew, LP.

Deficiency Claim shall be treated as a Class 7 Claim.  The Class 6 Claims are not Impaired.  There are no known claims in this Class.

5.7.   **Class 7:  Allowed Unsecured Claims.**  Except as otherwise set forth herein, after payment of all Allowed Administrative and Priority Claims, the Plan provides that each holder of an Allowed Claim in Class 7 shall receive Distribution(s) to the greatest extent possible from the Disposable Income of the Reorganized Debtors for a period of 36 months following the Effective Date. Estimated Disposable Income is set forth on the Debtor's financial projections, which are attached to the Disclosure Statement as **Exhibit B**. Allowed Unsecured Claims do not include any unknown, contingent, disputed or unliquidated Claims which are addressed in Class 8. Within 30 days of the Effective Date, the Plan requires that the Reorganized Debtors establish a separate escrow account to be used solely for funding Distributions to Class 7 Claimants (the "Class 7 Escrow").  Beginning thirty (30) days after the Effective Date and continuing for 36 months, the Reorganized Debtors shall deposit into the Class 7 Escrow the sum of at least $3,000.00 per quarter for 12 quarters for the purposes of paying Class 7 Allowed Unsecured Claims. In addition, the Debtors shall deposit their Disposable Income generated during each calendar quarter for 12 quarters after the Effective Date into the Class 7 Escrow, to be distributed pursuant to the Plan. The Reorganized Debtors shall make Distributions from the Class 7 Escrow to each holder of an Allowed Class 7 Claim annually, beginning on October 1, 2022 and ending on October1, 2025, in the amount of each Claimant's *pro rata* share of the Class 7 Escrow on that date, subject to the provisions for resolution of Class 8 Claims set forth below.  The Class 7 Claims are Impaired.

5.8   **Class 8: Contingent, Unliquidated or Disputed Claims.** The Debtors have compiled a list of Claims scheduled as contingent, unliquidated or disputed which is attached to the Disclosure Statement as **Exhibit A**. The Debtors have and will continue to engage in good faith negotiations with holders of contingent, unliquidated or disputed claims to resolve them on a consensual basis. The Debtors' initial proposed treatment of each claim is reflected on **Exhibit A** of the Disclosure Statement, however, the Debtors retain all rights to formally object to any claim identified on **Exhibit A** of the Disclosure Statement. If, and to the extent a contingent, unliquidated or disputed claim becomes an Allowed Claim, it shall become a Class 7 Allowed Claim, entitled to a pro-rata distribution as a Class 7 Claimant. The Debtors will not make any disbursements from the Class 7 Escrow until such time as all contingent, unliquidated or disputed claims have been finally Allowed or Disallowed. The Class 8 Claims are Impaired.

5.10   **Provisions applicable to all Claims**

5.10.1   Satisfaction of Claims:  The payments, distributions and other treatment provided in respect to each Allowed Claim in this Plan shall be in complete satisfaction, discharge and release of such Allowed Claim as against the Debtors and Reorganized Debtors. Notwithstanding any other provision of the Plan specifying a date or time for payment or distributions hereunder, no payment or distribution shall be made on any portion of a Claim which is disputed, unliquidated, contingent or subject to objection until such Claim becomes an Allowed Claim, whereupon it shall be paid pursuant to the terms of the Plan.

9

**5.10.2  Injunction:  Except as may be otherwise provided in the Confirmation Order, entry of the Confirmation Order shall also act as an injunction against any Person taking any action to commence or continue any action, employ any process, or act to collect, offset, recoup or recover any claim or cause of action satisfied, released or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including to the fullest extent provided by Sections 524 and 1141 thereof. From and after the Confirmation Date, there shall be in place with regard to the Assets and any Claims, an injunction to the same extent and with the same effect as the stay imposed by Section 362 of the Bankruptcy Code and such injunction will remain in effect until the Debtors have completed Plan payments to Class 7 Unsecured Creditors. Except as provided in this Plan or as expressly approved in writing by the Reorganized Debtors, all Claimants shall be precluded and enjoined from asserting against the Reorganized Debtors, their Estate, or the Reorganized Debtors' Assets, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the Claimant filed a proof of claim.**

5.10.3  Objections:  Unless otherwise ordered by the Bankruptcy Court, all objections to Claims, including determinations regarding the secured status of any Claim, shall be filed on or before one hundred and twenty (120) days following the Effective Date, or forty-five (45) days following the filing of any Claim, whichever is later, without prejudice to any extension of such period granted by agreement or order of the Bankruptcy Court.  A party objecting to a Claim shall serve a copy of the objection upon the holder of the Claim in accordance with Federal Rule of Bankruptcy Procedure 3007.  Subject to any bar date set by the Court, any Claim for which a timely objection is not filed shall be deemed allowed as filed or scheduled after expiration of the time to object.

5.10.4 Procedure for Contingent and Unliquidated Claims:  Creditors holding contingent or unliquidated claims shall have their Claims treated as set forth in Exhibit A to the Disclosure Statement, except as may be modified by a final order resolving an objection to such a claim or agreed order between the Debtors and any such Creditor.  Upon the allowance of a contingent or unliquidated claim, it shall be entitled to distribution under the Plan consistent with the treatment of other Claims in the Class in which it is ultimately allowed.

### ARTICLE VI
### MEANS OF IMPLEMENTATION OF PLAN

6.1.  Means of Implementation. Debtors will continue to operate post-confirmation as Reorganized Debtors in the ordinary course of business. Upon Confirmation, the Plan provides that Mrs. Tew's income will continue to be used to pay the ordinary living expenses of the Reorganized Debtors to the greatest extent possible, and that Mr. Tew will make contributions from investment profits in his Roth IRA account to fund the payments to Creditors proposed by the Plan, as well as to operate the business of Tew LP. The Debtors will also contribute any net recovery from litigation to fund payments under the Plan.

10

6.2.    <u>Vesting of Assets; Ability to Sell Free and Clear.</u> At the Confirmation Date, all Assets of Debtors and the Estate will vest in and remain with the Reorganized Debtors, free and clear of all liens, claims, interests and encumbrances except for those liens provided for in the Plan.  Pursuant to 11 U.S.C. § 1123(a)(5)(D), the Reorganized Debtors shall have the ability to sell and transfer the Assets free and clear of liens, claims, interests and encumbrances, with same to attach to the Net Sale Proceeds in order of priority, without further approval of the Bankruptcy Court.  The Debtors shall provide to any Creditor with an Allowed Secured Claim against an Asset at least ten (10) days advance notice of a proposed sale of said Asset. The Reorganized Debtors will remain subject to the jurisdiction of this Court until the case is closed or dismissed.

6.3.    <u>Payments from Disposable Income.</u> Beginning thirty (30) days after the Effective Date and continuing for 60 months, the Reorganized Debtors shall deposit into the Class 7 Escrow the sum of at least $3,000.00 per quarter for 12 quarters for the purposes of paying Administrative, Priority and Allowed Unsecured Claims. In addition, the Debtors shall deposit their Disposable Income generated during each calendar quarter after the Effective Date for 12 quarters into the Class 7 Escrow, to be distributed pursuant to the Plan. The Reorganized Debtors shall make Distributions from the Class 7 Escrow to each holder of an Allowed Class 7 Claim annually, beginning on October 1, 2022 and ending on October 1, 2025, in the amount of each Claimant's *pro rata* share of the Class 7 Escrow on that date.

6.4    <u>Prosecution of Claims and Causes of Action and Objections to Claims</u>: The rights, duties and obligations of the Debtors to investigate, prosecute and collect all of the Debtors' causes of action and pursue Avoidance Actions, shall pass to and vest in the Reorganized Debtors as of the Effective Date.  Specifically, claims to be considered by the Reorganized Debtors include, but are not limited to, claims for preferential and fraudulent conveyance claims under state and federal law and claims identified in the Debtors' bankruptcy schedules against all Persons.  If a motion or suit has not been filed to collect, prosecute or liquidate any action within one hundred and eighty (180) days after the Effective Date, it shall be deemed abandoned. After the Effective Date, the Debtors may employ counsel to pursue any causes of action on a contingency fee basis without Bankruptcy Court approval. If the Debtors seek to employ counsel on terms which would require payments (other than expenses) from their Disposable Income, the Debtors shall seek approval of such employment from the Bankruptcy Court. Any recovery from said litigation shall be deposited in the Reorganized Debtors' Account, subject to any professional fees and expenses associated with said litigation and payment of any income taxes due on such recoveries ("Net Litigation Recoveries"). Net Litigation Recoveries shall be used to pay Allowed Administrative, Secured, Priority and Unsecured Claims, provided that no more than fifty (50%) percent of any Net Litigation Recoveries may be used to pay Allowed Secured Claims.  Notwithstanding any provision relating to their Claims under the Plan, any Creditors having received a transfer of Estate property during the relevant look-back period of two (2) years before the Filing Date should assume they are subject to an Avoidance Action.  The Reorganized Debtors retain the right to pursue any Claims they believe have merit.

6.5.    <u>Post-confirmation Reporting.</u> The U.S. Trustee quarterly reports will be filed to evidence the distributions being made from Disposable Income until the case is closed, although the

Reorganized Debtors will seek to reopen the case and obtain entry of a discharge through further orders of this Court.

      6.6    <u>Continued Engagement of Professionals.</u>  The Reorganized Debtors shall continue the engagement of DelCotto Law Group PLLC and such other professionals as may be necessary for the purposes of rendering services in connection with implementing the Plan, resolving claims, and performing routine post-confirmation Chapter 11 administration such as final reporting and moving to have the case closed upon Plan consummation. DelCotto Law Group PLLC shall have a lien to secure payment of its Allowed Claim for professional fees and any post-confirmation fees against all real property owned by the Reorganized Debtors, which lien shall be inferior to any existing liens as preserved by this Plan, and against funds held in the Reorganized Debtors account.  The Reorganized Debtors are authorized to pay DelCotto Law Group PLLC professional fees from Disposable Income and Net Litigation Recoveries.

**ARTICLE VII**
**IMPAIRED CLASSES**

      All Classes of Claims are impaired, except for Classes 1 and 6.

**ARTICLE VIII**
**MANAGEMENT OF REORGANIZED DEBTORS**

      The Debtors will continue to operate following confirmation in the ordinary course of their affairs as Reorganized Debtors, subject to the continuing jurisdiction and supervision of this Court until the case is closed.

**ARTICLE IX**
**NOTICES**

      Except as otherwise specified, all notices and requests shall be given by any written means, including but not limited to electronic e-mail, facsimile, first class mail, express mail or similar overnight delivery service and hand-delivery letters, and any such notices or requests shall be deemed to have been given when received.  Notices shall be delivered as follows:

| To the Reorganized Debtors: | With a copy to: |
|---|---|
| Bernard V. Tew | Dean A. Langdon, Esq. |
| Andrea B. Tew | DelCotto Law Group PLLC |
| 910 Aiken Rd | 200 North Upper Street |
| Versailles, KY 40383 | Lexington, KY 40507 |
| E-mail: drtew@earthlink.net | Telephone: (859) 231-5800 |
| E-mail: andreatew@mindspring.com | E-mail:  dlangdon@dlgfirm.com |

12

## ARTICLE X
## EXECUTORY CONTRACTS AND LEASES

10.1    Debtors reserve the right to apply to this Court at any time prior to Confirmation for authority to assume or reject any and all executory contracts and unexpired leases in whole or in part as provided in 11 U.S.C. §§ 365 and 1123.  All remaining Executory Contracts and Unexpired Leases for which the Debtors have not so moved on or before the Confirmation Date shall be deemed rejected as of said date (the "Rejection Date"); provided, however, that any such motions, requests, proceedings, or actions to assume or reject, or to determine Allowed Cure Claims, pending at the Confirmation Date shall be continued until determined by Final Order of the Bankruptcy Court.

10.2    The lessor of any equipment or other personal property deemed rejected under an Order of the Court or by virtue of section 10.1 above shall have thirty (30) days following the Rejection Date in which to take possession of said equipment ("Repossession Date").  If said equipment or property is not taken by said lessor by the Repossession Date then said equipment shall be deemed abandoned by lessor and shall vest in the Reorganized Debtors free and clear of any claims, liens or interests.

10.3    Any Claim which any third party has with respect to the rejection of any unexpired lease or executory contract must be filed no later than thirty (30) days after the later of (i) entry of a Final Order of this Court authorizing such rejection or (ii) the Rejection Date.  Any such Claim for rejection damages shall be treated as a Class 7 Unsecured Claim, subject to determination of the Allowed amount as capped by 11 U.S.C. § 502(b)(6).

## ARTICLE XI
## CRAM DOWN

The Debtors hereby request that if all of the applicable requirements for Confirmation are met as set forth in 11 U.S.C. § 1129(a)(1) through (16) except subsection (8) thereof, that the Bankruptcy Court confirm this Plan pursuant to 11 USC § 1129(b).

## ARTICLE XII
## MISCELLANEOUS PLAN PROVISIONS

12.1    <u>Effectuating Documents; Exemption from Certain Transfer Taxes:</u>  The Reorganized Debtors are hereby authorized to execute, deliver, file or record such documents, contracts, releases and other agreements, and take all such further action as may be necessary, to effectuate and further evidence the terms of this Plan.  Pursuant to 11 U.S.C. § 1146(c), the delivery of any instrument or transfer under, and furtherance of, or in connection with, the Plan, including but not limited to deeds, bills of sale, assignments, or other instruments of transfer, shall not be subject to any stamp tax, real estate tax, or similar transfer tax.

13

12.2    <u>Nondischarge of Debtors Pending further Orders:</u>    Pursuant to 11 U.S.C. § 1141(d)(5), the Confirmation Order herein shall not discharge the Reorganized Debtors at the time of Plan confirmation, subject to further orders of the Court.

12.3    <u>Closing of the Case:</u>  After the Effective Date and substantial consummation of the Plan, the Reorganized Debtors will seek an Order from the Court closing the case.  Any such closure shall be subject to the following conditions authorized by 11 U.S.C. § 349(b): (a) said dismissal or closing shall not alter, amend, revoke or supersede the terms of the confirmed Plan; (b) all rights of the Debtors, Creditors or any other Person treated under the Plan shall remain unaffected by said closing; (c) the terms of the confirmed Plan shall be binding on all Persons; (d) all orders previously entered by the Court, unless altered by the Plan, shall remain in full force and effect; and (e) the Court shall retain all jurisdiction set forth herein.

12.4    <u>Modification of Plan:</u>  The Debtors may propose amendments to or modifications of this Plan under 11 U.S.C. § 1127 at any time prior to the Confirmation Date.  The Debtors may revoke or withdraw the Plan at any time prior to the Confirmation Hearing.  After the Confirmation Date the Reorganized Debtors may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of this Plan so long as the interests of the Creditors are not materially and adversely affected.

12.5    <u>Condition of the Effective Date:</u>  Prior to and as a condition of, the Effective Date, the Confirmation Order shall be in a form and substance satisfactory to the Debtors.

12.6    <u>Consummation of the Plan:</u>    Substantial consummation shall occur when the Reorganized Debtors make initial distributions to Creditors under the Plan.

12.7    <u>Minimum Distributions:</u>    If a distribution to be made to a Creditor holding an Allowed Claim would be $50.00 or less in the aggregate, notwithstanding any contrary provision of this Plan, no such distribution will be made to such holder unless a request therefore is made in writing to the Debtors.

12.8    <u>Disallowed Claims:</u>  Disallowed Claims shall be expunged from the Claims register in the Chapter 11 case without need for any further notice, motion or order.

12.9    <u>Copies of Confirmation Order Sufficient Evidence of Waivers, Releases, Etc.:</u>  Upon Confirmation of this Plan, a true and correct copy of the Confirmation Order shall be legally sufficient evidence of the terms, provisions and effects of this Plan for all purposes in any subsequent judicial proceeding or official record.

12.10  <u>Binding Effect:</u>  The rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors, heirs and assigns of such Person.

14

12.11    Unclaimed Funds:  All unclaimed payments or distributions made to any Creditor under the Plan, including but not limited to, unnegotiated checks or drafts, shall revert, after sixty (60) days, to the Reorganized Debtors to be redistributed pursuant to the Plan, and shall be forfeited as to the affected Creditors.  Any Creditor whose payment is forfeited under this provision will thereafter be treated as having a Disallowed Claim. Any unclaimed funds after a final distribution under the Plan shall be treated in accordance with 11 U.S.C. § 347(b).

12.12    Notice of Default:  In the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the Reorganized Debtors with copies to counsel of record for the Debtors, specifying the nature of the default.  Upon receipt of the default notice, the Reorganized Debtors shall have thirty (30) days to cure or contest such default from the time of receipt of the default notice. If such default has not been cured or contested within the applicable time period, the default may be brought to the attention of the Bankruptcy Court.

12.13    Set Off and Recoupment Rights:  Except as specifically provided in the Plan, no Person shall retain any contractual or statutory right to set off or recoup any asset in which the Reorganized Debtors have an interest in satisfaction of that Claimant's prepetition Claim.  Any right to set off or recoup a claim against an asset of Debtors that is not specifically retained under Local Rules or in the Plan is waived and forever barred.

12.14    No Admissions or Waivers:  Neither the filing of this Plan or the Disclosure Statement (as either may be modified or amended) nor the taking of any action by the Debtors, with respect to the Plan or Disclosure Statement is, or shall be deemed, an admission or waiver of any of the Debtors' rights or defenses.  In the event Confirmation does not occur or the Plan does not become effective, no statement contained herein or in the Disclosure Statement may be used or relied on in any manner as against the Debtors in any suit, action, proceeding or controversy within or outside of the Chapter 11 Case.  The Debtors further reserve any and all of their rights against all Persons in the event the Plan is not confirmed or does not become effective.

## ARTICLE XIII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of this Chapter 11 case after Confirmation of the Plan, and after entry of an Order closing the case, with respect to the following matters.

13.1    To hear and determine all controversies relating to or concerning the classification or allowance of Claims, including Professional Fees, unknown, disputed, contingent, or unliquidated Claims.

13.2    To determine and fix all Claims arising from the rejection of any executory contracts or leases.

15

13.3     To hear any pending motions for rejection, assumption or assignment of any executory contract or lease and to fix and determine any amounts alleged due and owing thereunder in order to cure defaults.

13.4     To enable the Reorganized Debtors to consummate any and all proceedings which they may bring prior to the closing of these cases to set aside Liens or encumbrances, to recover any preferences, transfers, Assets, or damages to which the Reorganized Debtors may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law.

13.5     To recover all Assets and properties of the Debtors and Reorganized Debtors, wherever located.

13.6     To permit amendments to the Schedules.

13.7     To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including ruling on motions regarding the liquidation of the Assets contemplated hereunder.

13.8     To modify this Plan pursuant to the Bankruptcy Code and the Rules of Bankruptcy Procedure.

13.9 To hear any matters regarding interpretation, enforcement, implementation or consummation of the Plan and to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order.

13.10     To decide issues concerning federal tax liability, reporting and withholding which may arise in connection with the Confirmation or consummation of this Plan.

13.11     To enter the Discharge Order and a final decree closing this Chapter 11 case.


Respectfully submitted,


By:     /s/Bernard V. Tew_____
        BERNARD V. TEW


By:     /s/ Andrea B. Tew_____
        ANDREA B. TEW


16

TENDERED BY:

DELCOTTO LAW GROUP PLLC

/s/ Dean A. Langdon, Esq.
200 North Upper Street
Lexington, KY 40507
Tel:  (859) 231-5800
Fax:  (859) 281-1179
E-mail:  dlangdon@dlgfirm.com
COUNSEL FOR DEBTORS

/Pleadings/Plan/Plan 2d Amd 20210726.doc

# EXHIBIT A

# PLAN DEFINITIONS

1.    "Administrative Claim" means any claim that is defined in 11 U.S.C. § 503(b) as being an "administrative expense" and granted priority under 11 U.S.C. § 507(a)(1) and including: (i) a Claim for any cost or expense of administration in connection with the Chapter 11 Case, including, without limitation, any actual, necessary cost or expense of preserving the Debtors' estate and of operating the business of the Debtors incurred on or before the Effective Date; and (ii) all fees and charges assessed against the Debtors' estate under Chapter 123 of Title 28 of the U. S. Code.

2.    "Allowed Administrative Claim" shall mean an Administrative Claim for which the Bankruptcy Court has entered a Final Order allowing such claim as an Administrative Claim provided that a request for payment of an administrative claim is filed with the Bankruptcy Court prior to thirty (30) days after the Effective Date of the Plan.

3.    "Allowed Claim" shall mean (a) a Claim which has been scheduled by the Debtors as undisputed, and as to which Claim no objection has been made within the time allowed for the making of objections, (b) a Claim allowed by a Final Order, (c) a Claim as to which a timely and proper proof of claim or application for payment has been filed, and as to which proof of claim or application for payment no objection has been made within the time allowed for the making of objections or (d) a Claim allowed under the Plan, notwithstanding any objection filed thereto. Interest accrued after the Filing Date of the Bankruptcy Case shall not be part of any Allowed Claim against the Debtors, except as required under the Plan or permitted by law.

4.    "Assets" shall mean, with respect to the Debtors, all of the right, title and interest in and to property of whatsoever type or nature, owned by the Debtors, as of the Effective Date, as well as the proceeds, products, rents and profits from all of the foregoing.  Assets include, but are not limited to, property as defined in 11 U.S.C. § 541 (each identified item of property being herein sometimes referred to as an Asset).

5.    "Avoidance Actions" shall mean any claims of the Debtors to avoid transfers or to recover money or property pursuant to 11 U.S.C. §§ 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553, including applicable state law claims.

6.    "Bankruptcy Case" shall mean as to the Debtors their case under Chapter 11 of the Bankruptcy Code.

7.    "Bankruptcy Code" or "Code" shall mean the United States Bankruptcy Code, 11 U.S.C. §§101 et seq., as in effect from time to time.

8.    "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court for the Eastern District of Kentucky.

9.      "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure applicable to cases pending before the Bankruptcy Court and local rules applicable to cases pending before the Bankruptcy Court, as the same may from time to time be in effect and applicable to proceedings under the Plan.

10.     "Bar Date" shall mean the final date for filing Proofs of Claim as ordered by the Bankruptcy Court if any.

11.     "Business Day" shall mean a day other than a Saturday, Sunday or other day on which national commercial banks are authorized or required by law to close.

12.     "Claim" shall mean (a) a right to payment, set off or recoupment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, set off or recoupment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

13.     "Confirmation" shall mean confirmation of the Plan pursuant to 11 U.S.C. § 1129, which shall occur upon entry of the Confirmation Order.

14.     "Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order.

15.     "Confirmation Hearing" shall mean the Bankruptcy Court's hearing under 11 U.S.C. § 1128 of the Bankruptcy Code on confirmation of the Plan.

16.     "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan with such modifications as may be agreed to or approved prior to the Effective Date by the Debtors.

17.     "Creditor" shall mean the owner or holder of a Claim.

18.     "Debt" shall mean the amount of indebtedness owed to any Creditor as of the Petition Date, contingent or otherwise, limited to principal and interest at the non-default contract rate, and, in the case of any Secured Creditor whose Claim is wholly Allowed, interest calculated post-petition at the lower of a) the non-default contract rate or b) such rate as is provided in the Plan.  "Debt" also includes any obligation under a lease or executory contract.  "Debt" does not include late fees, penalties, costs, attorney fees or other similar items except as may be included in an Allowed Claim as determined by agreement or by the Court.

19.     "Debtors" shall mean Bernard V. Tew and Andrea B. Tew

19

20.     "Deficiency Claim" shall mean an Allowed Claim of a Creditor, equal to the amount by which the aggregate Allowed Claim of such Creditor exceeds the sum of (a) any setoff rights of the Creditor permitted under 11 U.S.C. § 553 plus (b) the Secured Claim of such Creditor.

21.     "Disallowed Claim" shall mean a Claim, or any portion thereof, that has (a) been disallowed by a Final Order; (b) withdrawn by a Creditor; (c) been scheduled as contingent, disputed, or unliquidated, and as to which no proof of Claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court; or (d) not otherwise deemed timely filed under applicable law or the provisions of a confirmed Plan.

22.     "Disclosure Statement" shall mean the Disclosure Statement in respect to the Plan, including all exhibits and appendices, amendments and modifications, as finally approved by the Bankruptcy Court.

23.     "Disposable Income" shall have the meaning set forth in 11 U.S.C. § 1325(b)(2) (as incorporated by 11 U.S.C. § 1129(a)(15)(B)), provided that a) funds contributed by the Debtors under the plan of reorganization for Tew LP shall be deemed necessary for the continuation, preservation and operation of Tew LP; and b) the Debtor shall also contribute investment profits from their individual retirement accounts to the extent they exceed the exempt balance of $1,362,800 set forth in 11 U.S.C. § 522(n).

24.     "Effective Date" shall mean fifteen (15) days from the date of entry of the Confirmation Order, unless the Confirmation Order is stayed pending appeal, or if a stay of the Confirmation Order is in effect, then the first Business Day after the stay is vacated, or as soon thereafter as is practicable.

25.     "Filing Date" shall mean July 23, 2020, being the date of the filing of the voluntary petition for relief by Debtors under the Bankruptcy Code.

26.     "Final Order" shall mean an order or judgment of a court which (a) shall not have been reversed, stayed, modified or amended and the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, rehearing or certiorari is pending, or (b) if appealed from, shall have been affirmed and no further hearing, appeal or petition for certiorari can be taken or granted.

27.     "Lien" shall have the meaning assigned to it in 11 U.S.C. § 101(37).

28.     "Net Sale Proceeds" shall mean the proceeds from the sale of any real or personal property, less any sale commissions, ordinary closing costs and unpaid ad valorem taxes.

29.     "Person" shall mean any individual, corporation, limited liability company or partnership, general partnership, limited partnership, association, joint stock company, joint venture,

20

estate, trust, unincorporated organization, governmental unit or any political subdivision thereof or other entity.

30.     "Plan" shall mean this Plan of Reorganization proposed by the Debtors and filed in this Case as it may be further amended, modified or supplemented from time to time.

31.     "Priority Claim" shall mean a claim entitled to priority pursuant to 11 U.S.C. §507(a)(4), (5), (7) or (8).

32.     "Professional Claims" shall mean the allowances made by the Court to the Professionals, each of which allowance shall be an Administrative Claim.

33.     "Pro-rata" shall mean ratable payment, without preference.

34.     "Reorganized Debtors" shall mean the Debtors as of and after the Confirmation Date.

35.     "Residence" shall mean the 30-acre tract of real property with an address of 910 Aiken Road, Versailles, Kentucky acquired by the Debtors on February 9, 2007 as reflected by the deed of record in Deed Book 239, Page 654 in the Woodford County Court Clerk's Office, all rights associated with said property and all improvements thereon.

36.     "Schedules" shall mean those schedules and statements of financial affairs filed by the Debtors under Bankruptcy Rule 1007, as same may be amended from time to time.

37.     "Secured Claim" shall mean (a) a Claim secured by a Lien on property of the Debtors, which Lien is valid, superior, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly established in the Debtors' Reorganization Case, but only to the extent that such Claim does not exceed the value of the Debtors' Assets which the Bankruptcy Court finds are valid collateral for such Claim (except, if the class of which such Claim is a part makes the election provided for in 11 U.S.C. § 1111(b)(2), the entire amount of the Claim shall be a Secured Claim) and (b) a Claim allowed under the Plan as a Secured Claim.

38.     "Secured Creditor" shall mean the owner or holder of a Secured Claim.

39.     "Tax Claims" shall mean Claims of any Person for the payment of taxes (a) accorded priority pursuant to 11 U.S.C. § 507(a)(1) and (8), or (b) those secured by valid Liens on Assets of the Debtors as of the Confirmation Date.

40.     "Unsecured Claims" shall mean all Claims held by Creditors of the Debtors, including Deficiency Claims and Claims arising out of the rejection of executory contracts, other than Secured Claims, Administrative Claims and Priority Claims.

41.     "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

21